IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| ALBERT C. FRANKLIN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:06CV00048 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HOME DEPOT U.S.A., INC., | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendant. | ) | |

Albert C. Franklin filed this diversity action against Home Depot U.S.A., Inc. ("Home Depot") seeking recovery for an injury that Franklin sustained while using a reconditioned electric paint sprayer sold by Home Depot. Specifically, Franklin alleges that Home Depot failed to provide reasonable instructions or warnings with the sprayer and that the company's failure to warn gives rise to liability under both a theory of breach of implied warranty of merchantability and a theory of negligence. The case is presently before the court on Home Depot's motion for summary judgment. For the following reasons, the court will deny the motion.

## Factual and Procedural Background

On July 13, 2005, Franklin's father-in-law, Rockland See, purchased a reconditioned Magnum dx electric paint sprayer, manufactured by Graco, Inc. ("Graco"), from Home Depot's store in Winchester, Virginia. The paint sprayer, along with two or three other reconditioned sprayers of the same model, was offered for sale at a reduced price, without its original packaging or instructional materials. See selected the paint sprayer, after comparing the prices of new paint sprayers, because it appeared to be in the best condition of the reconditioned models.

See did not receive an owner's manual or an instructional video with the paint sprayer. However, the paint sprayer has several labels. The skin injection warning label, located near the power switch, states as follows:

**DANGER**

**SKIN INJECTION/**

**HIGH PRESSURE HAZARD**

High pressure spray or leaks can inject liquid into the body.
- Keep clear of nozzle and leaks.
- Set gun trigger safety when not spraying.
- Never spray without a tip guard.
- Relieve pressure through gun before removing parts or opening drain valve.
- All components must have a pressure rating not less than the sprayer.
- In case of accidental skin injection, seek immediate "SURGICAL TREATMENT."

Failure to follow this warning can result in amputation or serious injury.

READ AND UNDERSTAND ALL LABELS AND INSTRUCTION MANUALS BEFORE USE.

The paint sprayer also has a fire and explosion warning label on the side opposite the skin injection warning label. Beneath that label, the paint sprayer has a label containing a toll-free number for questions: "Have a Question? - Call us toll free 1-888-541-9788." Additionally, the paint sprayer's handle contains a fire and explosion hazard depiction and a skin injection hazard depiction.

The paint sprayer remained at See's house, unused, until July 31, 2005. On that date, Franklin decided to stain the outdoor deck at his residence. When Franklin went to See's house to borrow a paint brush, Franklin learned that See had purchased the paint sprayer. Since Franklin believed that he could paint the deck faster with the paint sprayer, he borrowed it from

2

See. Franklin did not inquire about any instructional materials or obtain any advice from See regarding how to use the paint sprayer. Franklin believed that the operation of the paint sprayer was self-explanatory and that he knew how to use it. Franklin had previously purchased a high pressure washer and an air compressor, and the pressure washer, which was purchased at an auction, did not come with any instructional materials.

Franklin took the paint sprayer from See's residence and returned home to stain his deck. Franklin did not inquire about instructional materials prior to using the paint sprayer, or call the toll-free number located on the side of the paint sprayer. Although Franklin observed the skin injection hazard depiction on the handle of the paint sprayer, he did not see or read the skin injection warning label.[1]

Franklin proceeded to insert the paint sprayer's feed line into a can of oil-based stain. He set the paint sprayer's pressure control knob on low spray and waited for pressure to build in the paint sprayer. Franklin then activated the paint sprayer by engaging the trigger on the spray gun.

Soon after Franklin began using the paint sprayer to stain his deck, the sprayer became clogged and sprayed stain back toward him. In response, Franklin removed the tip from the sprayer and shook the tip through mineral spirits to remove the clog. Franklin replaced the tip on the sprayer and resumed staining the deck. When the paint sprayer became clogged again, Franklin repeated this process. He also thinned the stain by mixing the stain with mineral spirits. Franklin subsequently finished staining the deck without further incident.

---

[1] At his deposition, Franklin acknowledged that, given the placement of the skin injection warning, he did not know why he failed to see it.

3

Franklin then proceeded to clean the paint sprayer by running mineral spirits through it. He changed the pressure control knob to the prime/clean setting and engaged the trigger on the spray gun. When Franklin concluded that the paint sprayer was clean, he disengaged the trigger mechanism on the spray gun. Franklin then removed the tip of the spray gun with his left hand, while he held the spray gun with his right hand. When Franklin removed the tip from the spray gun, a high-pressure stream of mineral spirits discharged out of the side of the spray gun, causing immediate pain in Franklin's right hand. When Franklin removed his right hand from the spray gun, he realized that the middle finger on his right hand was swollen. Franklin proceeded to Winchester Medical Center, where he underwent a procedure to clean and irrigate the damaged tissue in his right hand. On August 4, 2005, the middle finger on Franklin's right hand was amputated.

Franklin filed this action on June 12, 2006. Franklin claims that Home Depot was negligent in failing to provide reasonable instructions or warnings with the paint sprayer. Franklin also claims that the alleged failure to warn constitutes a breach of the implied warranty of merchantability. He seeks damages in the amount of $500,000.

The case is presently before the court on Home Depot's motion for summary judgment. The court held a hearing on the motion on June 8, 2007.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. For a party's evidence to raise a genuine issue of material fact to avoid

summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

### Discussion

Home Depot bases its motion for summary judgment on five grounds: (1) that the skin injection warning on the paint sprayer was sufficient as a matter of law to satisfy Home Depot's duty to warn; (2) that Home Depot's failure to provide instructional materials was not the proximate cause of Franklin's injuries; (3) that both of Franklin's claims are barred by the sophisticated user defense; (4) that Franklin's negligence claim is barred by the defense of contributory negligence; and (5) that Franklin's negligence claim is barred by the defense of assumption of the risk. The court will address each of these grounds in turn.

I.  The Adequacy of the Warning

Under Virginia law, which the parties agree controls the resolution of this action, a seller that fails to warn of the dangers of its products can be held liable under a theory of negligence or a theory of breach of implied warranty of merchantability. See Bly v. Otis Elevator Co., 713 F.2d 1040, 1042 (4th Cir. 1983); Butler v. Navistar Intern. Transp. Corp., 809 F. Supp. 1202, 1207 (W.D. Va. 1991). Under either theory, "the plaintiff must show, (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed

5

when the goods left the defendant's hands."[2] Logan v. Montgomery Ward & Co., 216 Va. 425, 219 S.E.2d 685, 687 (Va. 1975). A product is "unreasonably dangerous" if the product "is defective in assembly or manufacture, unreasonably dangerous in design, or *unaccompanied by adequate warnings concerning its hazardous properties*." Morgen Indus. v. Vaughan, 252 Va. 60, 471 S.E.2d 489, 492 (Va. 1996) (emphasis added).

Whether a product's warnings are adequate is ordinarily a question of fact for the jury. See Abbot v. American Cyanamid Co., 844 F.2d 1108, 1115 (4th Cir. 1988); Whitehurst v. Revlon, Inc., 307 F. Supp. 918, 921 (E.D. Va. 1969). In determining whether a warning was adequate under the circumstances, the jury may consider: "(1) whether it could be expected to catch the attention of a reasonable person; (2) whether it could be understood by a reasonable person; and (3) whether it gave a reasonable indication of the nature and extent of the potential danger." Va. Civil Jury Instr. No.§ 34-19. Although the warning need not advise the user of "'*exactly* how the danger . . . might operate,'" Pfizer, Inc. v. Jones, 221 Va. 681, 272 S.E.2d 43, 44 (Va. 1980) (emphasis added) (citing Sadler v. Lynch, 192 Va. 344, S.E.2d 664, 667 (Va. 1951)), it must "convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent user," Ellis v. International Playtex, Inc., 745 F.2d 292, 306 (4th Cir. 1984).

In this case, Home Depot concedes that it did not provide any instructional materials with the reconditioned paint sprayer. However, Home Depot argues that the skin injection warning

---

[2]Although the duty to warn under a theory of negligence is "obviously similar, in many respects," to the duty to warn under a theory of implied warranty, there are slight differences. Bly, 713 F.2d at 1040. For instance, "the duty to warn under an implied warranty theory focuses upon whether the lack of warning renders the product unreasonably dangerous," while "a manufacturer will be liable in negligence for a failure to warn if its conduct is unreasonable." Id.

6

label and the skin injection warning depiction on the paint sprayer were sufficient to satisfy its duty to warn. Specifically, Home Depot emphasizes that the label advises users of the precise nature of the hazard posed by the paint sprayer (a skin injection), and that it warns of the precise consequences posed by the hazard (amputation or serious injury). Home Depot further emphasizes that the skin injection warning label identifies precautions that users can take to eliminate the risk of a skin injection.

In response to Home Depot's motion for summary judgment, Franklin has submitted a report from a potential expert witness, Dr. Gary Thompson. Dr. Thompson summarizes the safety and instructional materials that normally accompany a Graco Magnum dx sprayer, including the written manual, the quick operator's guide, and the operational video. Dr. Thompson emphasizes that these materials clearly explain the proper steps that should be followed in order to avoid a fluid injection injury, including the steps that must be taken to safely clean the paint sprayer. "With specific reference to the cleaning of the sprayer, the material describes the procedure for relieving pressure from the system . . . and also instructs that the spray tip and tip guard be removed from the spray gun, both of which should be done prior to beginning the cleaning procedure." (Thompson Report at 4). In contrast, Dr. Thompson emphasizes that the skin injection warning label contains no specific information on the proper cleaning process, and that it does not explain how to drain pressure from the paint sprayer. Dr. Thompson also notes that while the instructional materials advise users to remove the tip guard prior to cleaning the paint sprayer, the warning label suggests otherwise by advising users to never spray without a tip guard. Based on Dr. Thompson's report, Franklin argues that "[w]hile

7

the labels arguably alert the user of the potential danger of a pressure skin-injection injury, they are inadequate in informing the user of how to avoid such injury."

Having reviewed this evidence and the relevant legal authority, the court concludes that Franklin has raised a genuine issue of material fact as to whether the paint sprayer's warning labels were adequate to discharge Home Depot's duty to warn. In reaching this conclusion, the court disagrees with Franklin's suggestion that a warning label must include a precise or exhaustive list of instructions on how to relieve or eliminate all risks associated with the use of a product; it is sufficient if the warning label gives notice as to the nature of the risks and the nature of any potential harm. See Ellis, 745 F.2d at 306; Pfizer, 272 S.E.2d at 44. Nonetheless, in the instant case, the court believes that a reasonable jury could find that the warning labels on the paint sprayer failed to convey a "fair indication of the nature and extent of the danger," Ellis, 745 F.2d at 306, given Dr. Thompson's report, which emphasizes that the labels contain no specific information as to the danger associated with attempts to clean the sprayer without the full release of pressure in the unit. Additionally, the paint sprayer was sold without any instructional materials that would have contained such information. This is not to say that Franklin will ultimately prevail on this issue; the question of whether the warning labels were adequate is admittedly close. However, given the standard for considering a motion for summary judgment, the court must resolve any doubt in Franklin's favor. See Anderson, 477 U.S. at 255. Accordingly, the court will deny Home Depot's motion for summary judgment on this ground.

8

## II. Proximate Cause

Home Depot next argues that its omission of instructional materials for the paint sprayer was not the proximate cause of Franklin's injuries. As Home Depot explains, under both theories of recovery asserted by Franklin, the plaintiff must prove that any breach of duty by the seller was the proximate cause of his injuries. See Butler v. Navistar Int'l Transp. Corp., 809 F. Supp. 1202, 1207 (W.D. Va. 1991). Under Virginia law, proximate cause is defined as "that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Atkinson v. Scheer, 256 Va. 448, 508 S.E.2d 68, 71 (Va. 1998). Ordinarily, proximate cause is a question of fact for the jury. Phillips v. Southeast 4-H Educ. Ctr., 257 Va. 209, 510 S.E.2d 458, 460 (Va. 1999). It becomes a question of law only "when reasonable minds could not differ about the conclusions to be reached." Id.

To support its motion for summary judgment on this issue, Home Depot primarily argues that its omission of the instructional materials did not affect Franklin's decision to use the paint sprayer. Home Depot emphasizes that Franklin did not inquire about the instructional materials, that he believed that the paint sprayer was self-explanatory, and that he did not see or read the skin injection warning label. For these reasons, Home Depot argues that the omission of the instructional materials did not proximately cause Franklin's injuries.

In response, Franklin argues that Home Depot overlooks specific testimony from his deposition which indicates that he would have examined the instructional materials that are included with new Magnum dx sprayers. Specifically, Franklin testified that he had some doubt as to whether he knew how to clean the paint sprayer (Franklin Dep. at p. 39), and that if the

9

sprayer had been accompanied by an instructional tape, he would have viewed it: "I would have, I would have used [the tape], I'm not that dumb, you know. I like my body. I don't want to do anything to harm myself." (Dep. at p. 41). Franklin also relies on the report from Dr. Thompson, in which he opines that the instructional materials that normally accompany the paint sprayer instruct users how to perform the critical steps of the cleaning procedure, and that the accident would not have occurred had the critical steps been followed.

Viewing this evidence in the light most favorable to Franklin, the issue of whether the omission of instructional materials proximately caused Franklin's injuries presents a genuine issue of material fact making summary judgment inappropriate. It is for the jury, properly instructed on Virginia law, to consider the difficult questions as to the likelihood that Franklin would have used the instructional materials if they had been included with the paint sprayer, and the degree to which they may have prevented his injuries.

III.   Sophisticated User Defense

Home Depot also argues that Franklin's sophistication and knowledge of high-pressure equipment bars recovery on both of his claims.[3] Having reviewed the relevant case law, however, the court concludes that the sophisticated user defense is inapplicable to the facts of this case.

Under Virginia law, the sophisticated user defense relieves a manufacturer or seller from liability for failure to warn, "if the *employer-purchaser* is aware of the dangers of the product

---

[3] Home Depot relies on Franklin's deposition testimony, in which he stated that he had "been around mechanics . . . all [of his] life" (Franklin Dep. at 37), that he had experience with a lot of tools (Dep. at 19), that he owned and had used a power washer and an air compressor (Dep. at 18-20, 24-25), and that he did not have any concerns with using the paint sprayer based on his experience with power tools (Dep. at 55).

10

that it purchased for its business, and this defense places upon the employer any duty to warn employees of danger." Amos v. BASF Corp., 1996 U.S. Dist. LEXIS 20604, *16 (W.D. Va. July 15, 1996) (emphasis added) (citing Beale v. Hardy, 769 F.2d 213, 215 (4th Cir. 1985)). Like Amos, other cases involving this defense, including those cited by Home Depot, discuss its application to employer-purchasers. See Morgan Indust., Inc. v. Vaughan, 252 Va. 60, 471 S.E.2d 489 (Va. 1996); Goodbar v. Whitehead Bros., 591 F. Supp. 552 (W.D. Va. 1984); Jones v. Meat Packers Equip. Co., 723 F.2d 370 (4th Cir. 1983); Fisher v. Monsanto Co., 863 F. Supp. 285 (W.D. Va. 1994); Young v. J.I. Case Co., 1991 U.S. Dist. LEXIS 15816 (E.D. Va. June 3, 1991). Because Home Depot has failed to establish that the sophisticated user defense extends beyond employer-purchasers to individual consumers, the company is not entitled to summary judgment with respect to this issue.

    IV.    <u>Contributory Negligence and Assumption of the Risk</u>

In its final arguments, Home Depot contends that Franklin acted with contributory negligence by failing to obtain and read the paint sprayer's instructions prior to using it, and by failing to follow the precautions included on the sprayer's skin injection warning label. Similarly, Home Depot contends that Franklin assumed the risk of injury by using the paint sprayer without heeding the warnings affixed on the product or obtaining and reading the sprayer's instructions.

Both contributory negligence and assumption of the risk bar a plaintiff's recovery under a theory of negligence, but not his recovery under a breach of warranty theory. See Freeman v. Case Corp., 924 F. Supp. 1456, 1469-1471 (W.D. Va. 1996), re'vd on other grounds, 118 F.3d 1011 (4th Cir. 1997). "A plaintiff's negligence claim is barred by his contributory negligence if

he failed to act as a reasonable person would have acted for his own safety under the circumstances." Id. at 1469 (citing Artrip v. E.E. Berry Equip. Co., 240 Va. 354, 397 S.E.2d 821, 824 (Va. 1990)). Whereas contributory negligence involves an objective standard, assumption of the risk "focuses on the injured person's subjective state of mind, asking whether 'plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to it.'" Id. at 1471 (quoting Artrip, 397 S.E.2d at 824). Unless reasonable minds could not differ on these issues, they are for the jury to decide. Id. at 1469-1471.

To support its motion for summary judgment on the issue of contributory negligence, Home Depot emphasizes that Franklin did not ask his father-in-law for instructional materials, and that he did not call the paint sprayer's toll-free number to inquire about instructional materials, even though the skin injection warning label specifically advises users to read and understand all labels and instruction manuals prior to using the paint sprayer. Home Depot also argues that Franklin failed to follow instructions included on the skin injection warning label, in that he failed to set the gun trigger safety when he was not spraying the gun, and that he failed to relieve pressure through the gun before removing the gun's tip. Home Depot raises the same arguments in support of its motion for summary judgment on the issue of assumption of the risk. Additionally, Home Depot argues that Franklin appreciated the risks of using the paint sprayer, based on his history of using similar high pressure equipment and the fact that the paint sprayer clogged twice and sprayed stain back toward his face while he was using it.

In response, Franklin argues that there is no evidence that instructional materials were available at the Home Depot store or by merely calling the toll-free number on the paint sprayer. Franklin also argues that whether he acted with contributory negligence by failing to call the toll-

free number is an issue of fact for the jury, since he was able to successfully stain the deck and presumably resolve the clogging problem on his own. Additionally, Franklin emphasizes that whether a reasonably prudent user is required to set the trigger safety whenever he pauses spraying, even for a brief moment, is not an issue upon which reasonable minds cannot differ, and that there were no instructions on the paint sprayer regarding how to relieve pressure. With respect to assumption of the risk, Franklin argues that there is no evidence that conclusively establishes that he fully understood the dangerous risks posed by the paint sprayer.

As explained during the hearing on Home Depot's motion, the court is of the opinion that the issue of whether these defenses bar Franklin's negligence claim is quite close. However, viewing the record in the light most favorable to Franklin, the court concludes that reasonable minds could differ as to whether Franklin acted with contributory negligence or assumed the risk of his injury. Thus, these issues must be decided by the jury.

## Conclusion

For the reasons stated, Home Depot's motion for summary judgment will be denied, and the case will proceed to trial. The parties are advised that the court will bifurcate the trial into liability and damages phases.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 13th day of June, 2007.

_____
United States District Judge