IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 5 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

ALBERT C. FRANKLIN,                          )
                                             )
            Plaintiff,                       )        Civil Action No. 5:06CV00048
                                             )
v.                                           )        **MEMORANDUM OPINION**
                                             )
HOME DEPOT U.S.A., INC.,                     )        By: Hon. Glen E. Conrad
                                             )        United States District Judge
            Defendant.                       )

Albert C. Franklin filed this diversity action against Home Depot U.S.A., Inc. ("Home

Depot") seeking recovery for an injury that Franklin sustained while using a reconditioned

electric paint sprayer sold by Home Depot. Specifically, Franklin alleges that Home Depot failed

to provide reasonable instructions or warnings with the sprayer and that the company's failure to

warn gives rise to liability under both a theory of breach of implied warranty of merchantability

and a theory of negligence. The case is presently before the court on Franklin's motion in limine,

in which he seeks to exclude the testimony of Home Depot's expert, Stuart M. Statler. For the

reasons that follow, the motion will be granted in part and denied in part.

## Factual Background

On July 13, 2005, Franklin's father-in-law, Rockland See, purchased a reconditioned

Magnum dx electric paint sprayer, manufactured by Graco, Inc. ("Graco"), from Home Depot's

store in Winchester, Virginia. The paint sprayer, along with two or three other reconditioned

sprayers of the same model, was offered for sale at a reduced price, without its original

packaging or instructional materials. See selected the paint sprayer, after comparing the prices of

new paint sprayers, because it appeared to be in the best condition of the reconditioned models.

See did not receive an owner's manual or an instructional video with the paint sprayer. However, the paint sprayer has several warning labels, including a skin injection warning label, a fire and explosion warning label, a fire and explosion hazard depiction, and a skin injection hazard depiction. The paint sprayer also has a label containing a toll-free number for questions.

The paint sprayer remained at See's house, unused, until July 31, 2005. On that date, Franklin decided to stain the outdoor deck at his residence. When Franklin went to See's house to borrow a paint brush, Franklin learned that See had purchased the paint sprayer. Since Franklin believed that he could paint the deck faster with the paint sprayer, he borrowed it from See. Franklin did not inquire about any instructional materials or obtain any advice from See regarding how to use the paint sprayer. Franklin believed that the operation of the paint sprayer was self-explanatory and that he knew how to use it.

Franklin took the paint sprayer from See's residence and returned home to stain his deck. Franklin did not inquire about instructional materials prior to using the paint sprayer, or call the toll-free number located on the side of the paint sprayer. Although Franklin observed the skin injection hazard depiction on the handle of the paint sprayer, he did not see or read the skin injection warning label.

After Franklin stained his deck, he proceeded to clean the paint sprayer by running mineral spirits through it. When Franklin concluded that the paint sprayer was clean, he disengaged the trigger mechanism on the spray gun. Franklin then removed the tip of the spray gun with his left hand, while he held the spray gun with his right hand. When Franklin removed the tip from the spray gun, a high-pressure stream of mineral spirits discharged out of the side of the spray gun, causing immediate pain in Franklin's right hand. When Franklin removed his

2

right hand from the spray gun, he realized that the middle finger on his right hand was swollen. Franklin proceeded to Winchester Medical Center, where he underwent a procedure to clean and irrigate the damaged tissue in his right hand. On August 4, 2005, the middle finger on Franklin's right hand was amputated.

Franklin filed this action on June 12, 2006. Franklin claims that Home Depot was negligent in failing to provide reasonable instructions or warnings with the paint sprayer. Franklin also claims that the alleged failure to warn constitutes a breach of the implied warranty of merchantability. A jury trial is scheduled to begin on June 19, 2007.

<u>**Discussion**</u>

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Home Depot disclosed the opinions of its expert, Stuart M. Statler. Franklin has now moved to exclude all of those opinions.

I.       <u>Statler's Report</u>

Statler served as Commissioner of the Consumer Products Safety Commission (CPSC) from August of 1979 to May of 1986. In that capacity, he worked extensively on issues related to product warnings, directing staff efforts on recalls and devising appropriate on-product warnings and instructional materials. Upon the completion of his term as CPSC Commissioner, Statler became vice-president and partner with the international management consulting firm of A.T. Kearney, where he headed up the firm's risk management and product liability practice. He continues to serve as a consultant in the areas of product liability, risk management, warnings, and recalls. Statler has testified as an expert in numerous cases, and he has written a variety of publications on issues related to product safety.

3

In the expert report submitted in this case, Statler identifies factors that must be taken into consideration in determining whether a particular product poses a reasonable or unreasonable risk, including the severity of the risks poses by the product's usage; the vulnerability of the population affected; the functionality of the product; the availability of substitute products; the availability of alternative designs; the transparency or latency of the risk; comparative safety considerations; cost-benefit considerations; economic considerations; alternative means of achieving the safety objective; and responsible manufacturing or retailing practices. Applying these considerations, Statler notes that, much like lawn mowers, air compressors, and pressure washers, the usage of an electric paint sprayer entails significant risks, even if used properly. However, Statler emphasizes that "the mere presence of risk doesn't render the product an unreasonable risk"; "[s]afe usage depends on taking certain precautions, and most importantly, taking time prior to first use or operation of these kinds of products to understand in advance what constitutes safe behaviors and proper maintenance." (Statler Report at 9).

Statler then discusses the effectiveness of product warnings:

> Over the years, there has been considerable discussion, and sometimes heated debate, about the effectiveness and ineffectiveness of product warnings. The literature involving epidemiology, engineering, human factors, and product safety in general is rife with studies, analyses, and findings which address the efficacy of warnings as a means for influencing user behaviors and preventing accidents. But out of all these differing hypotheses and conclusions, one thing stands out as abundantly clear, as to which there is no real controversy. It is a fundamental axiom as to which both the Consumer Product Safety Commission and the broad consensus of safety professionals and literature on the subject concur. And that is this: *on-product warnings are much more likely to be read, understood and appreciated by a prospective user than material contained in often unwieldy or voluminous product manuals which often go unread and unheeded.*

4

(Statler Report at 10) (emphasis in original). Statler continues by noting that the CPSC's efforts "have aimed at attenuating the risk through reasonable disclosure and identification of the danger on the product itself, wherever practical and feasible." (Statler Report at 10). Statler also explains that, "since the advent of broad-scale use of the Internet over the past decade," there is an "increasing tendency on the part of the world-wide manufacturing community to refer product purchasers to the availability of [product manuals] on the manufacturer's website, instead of having the manual(s) accompany sale of the product itself." (Statler Report at 11). Additionally, Statler explains that the Consumer Product Safety Commission "has encouraged product manufacturers - particularly with respect to products entailing acknowledged risks - to include on-product placement, in a conspicuous manner, of . . . a toll-free number to allow consumers to easily reach them in the event of any concerns, safety or otherwise." (Statler Report at 12).

Applying these considerations, Statler concludes that Graco and Home Depot undertook reasonable means to warn and inform users of a preventable risk:

> . . . [L]ike other such power sprayers, Graco's Magnum/dx model is known and acknowledged to carry with it a significant risk of injury if not used properly. That is precisely the risk of skin injection of fluids which Graco warns against on the product itself. Actually, the warnings appear twice over, . . . with the on-product warnings both being explicit as to the very type of skin injection injury to the hand which plaintiff encountered in this case.

> Graco makes no effort whatever to obscure or understate the risk. Instead, through on-product warnings, the company highlights the risk twice-over. Because severe personal injury may result, Graco uses the appropriate signal term of "Danger" - in letters writ [sic] large in both instances - to indicate the very highest level of risk, instead of a lesser term such as "Warning" or "Caution," which might otherwise play down the risk and thereby receive less attention from a prospective user. And in each

5

instance, Graco provides an accompanying graphic depicting the
explicit danger of skin injection to an operator's hand.

(Statler Report at 9-10). Statler also emphasizes that the paint spayer's warning is "both concise

and not confusing"; that additional instructional materials were available on Graco's website;

that a toll-free telephone number is located on the paint sprayer "conspicuously" and in "bold

and very large print"; and that, had the number been called, Franklin would have received

information on how to order instructional materials. (Statler Report at 10, 11). Based on the

foregoing, Statler opines that the actions of Graco and Home Depot "reflect some of the more

exemplary practices within the manufacturing and retailing community concerning known and

preventable risks from consumer products," and that "[w]hen a consumer chooses to ignore or

dismiss [proper warnings], there is really very little, if anything, more that a manufacturer like

Graco or a seller like Home Depot can do to avert injury." (Statler Report at 13).

II.     Franklin's Arguments

Franklin first attacks Statler's opinions under the doctrines announced in Daubert v.

Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael,

526 U.S. 137 (1999). Franklin does not contest Statler's qualifications in terms of his experience

or education. Instead, Franklin argues that Statler's opinions are unreliable, because Statler fails

to discuss the methodology, if any, that he applied.

Rule 702 of the Federal Rules of Evidence was amended in 2000, in response to the

United States Supreme Court's decisions in Daubert and Kumho. See Fed. R. Evid. 702 advisory

committee notes. The rule, as amended, states as follows:

If scientific, technical, or other specialized knowledge will assist
the trier of fact to understand the evidence or to determine a fact in

6

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The advisory committee note to the amended rule summarizes the principles set forth in Daubert and Kumho Tire, and "succinctly describes the proper method of applying these principles." Blevins v. New Holland North America, Inc., 128 F. Supp. 2d 952 (W.D. Va. 2001). Specifically, the note explains as follows:

Daubert set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the Daubert Court are (1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in Kumho held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S.Ct. at 1175.

No attempt has been made to "codify" these specific factors. Daubert itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific Daubert factors can apply to every type of expert testimony.

7

Fed. R. Evid. 702 advisory committee note; see also <u>Humphries v. American Trans. Servs., Inc.</u>, 1999 U.S. App. LEXIS 25522, *9 (4th Cir. Oct. 13, 1999) ("the Daubert factors do not constitute a definitive checklist; the factors may be reasonable measures of reliability depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony").

Applying these principles, the court concludes that Statler's opinions are not excludable as unreliable. Statler has more than twenty years of experience in the field of consumer product safety, and as previously noted, is a former Commissioner of the Consumer Product Safety Commission. Statler has worked extensively on issues related to product warnings and has, himself, devised product warnings and instructional materials. Statler drew upon his considerable experience, in particular, his experience with the CPSC, in formulating his opinions. Statler also referenced industry trends and CPSC principles. For these reasons, the court concludes that Statler's report "did not derive merely from speculation or subjective opinion," <u>Humphries</u>, 1999 U.S. App. LEXIS 25522 at *10, and that his opinions are not excludable as unreliable.

Franklin next argues that Statler's opinions as to the adequacy of the warning labels on the paint sprayer must be excluded, because they will not assist the jury. Franklin contends that the jury is capable of evaluating the adequacy of the warnings on the basis of their common knowledge, and that this issue does not require the assistance of an expert.

Rule 704(a) provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). "However, 'the fact that an opinion or inference is not objectionable

8

because it embraces an ultimate issue does not mean . . . that all opinions embracing the ultimate issue must be admitted.'" Hermitage Indust. v. Schwerman Trucking Co., 814 F. Supp. 484, 485 (D. S.C. 1993). The offered testimony is subject to Rule 702 of the Federal Rules of Evidence, which allows the admission of expert testimony only if the testimony "assists the trier of fact to understand the evidence or to determine a fact in issue." Fed R. Evid. 702; see also Persinger v. Norfolk & W. Ry., 920 F.2d 1185, 1188 (4th Cir. 1990) ("we have held that Rule 702 excludes expert testimony on matters within the common knowledge of jurors"). Testimony that is within the common knowledge of jurors "almost by definition, can be of no assistance." Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986).

Having considered Franklin's arguments and the aforementioned principles, the court agrees with Franklin that the ultimate issue of whether the paint sprayer's warning labels were adequate is a matter within a jury's common sense and everyday knowledge, which would not require or benefit from expert assistance. The jury will have an opportunity to view the warning labels themselves, and the court is convinced that the jury should be competent to decide whether the warning labels were adequate under the circumstances.[*] See Persinger, 920 F.2d at 1188 (affirming the district court's decision that the question of whether a given amount of weight was safe to lift was within the common knowledge of jurors); Chalifa v. Baltimore, 1993 U.S. App. LEXIS 3677, *8 (4th Cir. Feb. 25, 1993) (affirming the district court's decision to exclude an expert's testimony on the basis that it was on a matter within the juror's knowledge, where the expert would have testified that a photograph of an area in which the plaintiff fell showed an

---

[*]As Franklin notes in support of his motion, Statler testified at his deposition that the "language on the machine was clear and concise enough that [Franklin] should have been able to see it and understand it as a matter of *common sense*." (Statler Dep. at 43) (emphasis added).

9

unreasonably dangerous condition). Accordingly, Statler's opinions as to the adequacy of the warning labels at issue will be excluded.

Franklin also seeks to exclude Statler's opinions regarding whether or not Franklin would have consulted any additional operating instructions and/or warning materials, had such materials been provided. Although such opinions were not expressly disclosed in Statler's report, Statler opined at his deposition that reviewing additional materials "would have been inconsistent with everything else [Franklin] did and [said in his] deposition." (Statler Dep. 38). Home Depot does not address this argument in its response to Frankin's motion in limine; thus, it is unclear whether Home Depot plans to elicit such testimony. In any event, the court agrees with Franklin that Statler's opinions as to his likely behavior lack a sufficient factual basis and must be excluded. See Anderson v. National R.R. Passenger Corp., 866 F. Supp. 937, 943 (E.D. Va. 1994) ("a court should disregard expert opinion if it is mere speculation, not supported by facts").

### Conclusion

For the reasons stated, Franklin's motion in limine will be granted in part and denied in part. The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This _14th_ day of June, 2007.

_/s/ Jmc4 Conrad_
_____
United States District Judge

10